**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**



Submitted February 22, 2016[*]
Decided February 22, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1964

| | |
|---|---|
| WASIU I. ALADE,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | |
| | No. 12 C 9215 |
| UNDERWRITERS LABORATORIES, INC.,<br>*Defendant-Appellee*. | Robert W. Gettleman,<br>*Judge*. |

**O R D E R**

    Wasiu Alade appeals the grant of summary judgment for his former employer, Underwriters Laboratories, in this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981, asserting that he was fired because of his race (black) and national origin (Nigerian). We affirm.

    The information technology department at Underwriters, a consumer-product safety organization, sought to hire an expert in Oracle payroll software who would be able to develop and maintain the company's payroll-processing systems internationally.

---

    [*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

No. 15-1964 Page 2

After Alade was interviewed by telephone and in person, he was hired in the IT department because of his past experience working at Oracle and his experience working with systems outside North America.

For the ten days that Alade worked for Underwriters, his supervisor noted a number of problems with his work. First, Alade made misguided recommendations on the project that he led—the implementation of new payroll software in Hong Kong and China. One of the employees assisting him on the project expressed concerns to the supervisor about Alade's recommendation of a program that was incompatible with the systems in Hong Kong and China and his recommendation of tax software that is used only in North America. Second, Alade sent another of the employees an email outlining steps for completing the payroll process in Hong Kong, but the steps were in the wrong order and one of the steps is followed in the United States only. Third, Alade needed more than a week to finish two programming tasks that the supervisor estimated should take only four hours each to complete. Fourth, Alade broke company protocol by making changes to the payroll processes in China without first testing the changes outside the system; the changes caused several errors in calculating payroll.

Just one week after Alade started working at Underwriters, the supervisor emailed the director of the IT department that he had made a "grave mistake" in recommending Alade's hire. The supervisor chronicled Alade's performance problems and recommended that Alade be discharged. The supervisor fired Alade three days later.

Alade sued Underwriters for discrimination based on race and national origin. The district court ultimately granted summary judgment for Underwriters, determining that Alade offered no evidence from which a reasonable jury could conclude he was fired because of his race or national origin. The court determined that he could not establish a prima facie case under the indirect method of proof, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because he "utterly" failed to show that he was meeting Underwriters' legitimate job expectations, nor could he show that the reason for his discharge was pretextual. The court rejected any suggestion that the supervisor, who knew Alade was black and Nigerian when he hired him, "somehow discovered that he was racist in one week."

On appeal Alade argues that the district court improperly disregarded evidence that he was meeting Underwriters' legitimate job expectations, and therefore, his poor performance was pretext for firing him. He asserts that his performance problems were fabricated because the supervisor could not remember who told him about each of the alleged mistakes. He maintains that he correctly performed all of the tasks required of

Case: 1:12-cv-09215 Document #: 94 Filed: 03/15/16 Page 3 of 3 PageID #:872
Case: 15-1964     Document: 00712720432     Filed: 03/15/2016     Pages: 3

No. 15-1964                                                                                      Page 3

him. Moreover, Alade says that it was his supervisor, not he, who made the changes to the payroll process in China resulting in errors to the payroll calculations.

In cases such as this, where the employer says that the reason for firing an employee is poor job performance, the question whether an employee was meeting the employer's legitimate job expectations overlaps with the question whether the employer's reason for firing the employee was pretext. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014); *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). We therefore begin with the question of pretext, bearing in mind that if Alade cannot provide evidence from which a reasonable jury could infer that Underwriters' reason for firing him was pretextual, then he also cannot show that he was meeting Underwriters' legitimate expectations. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). With the question of pretext, to defeat summary judgment, Alade needed to show that his supervisor did not honestly believe that he was performing poorly, which Alade could do by presenting some evidence that his performance problems had no basis in fact. *See Bates v. City of Chicago*, 726 F.3d 951, 956–57 (7th Cir. 2013); *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 738 (7th Cir. 2011).

The district court's analysis was sound. Alade did not present any evidence to substantiate his assertion that his performance problems were fabricated. Underwriters, on the other hand, pointed to Alade's spotted performance record, including emails about his poor performance and deposition testimony from both his supervisor and a lower-level employee corroborating the problems with his work. Given Underwriters' evidence and Alade's lack of evidence, the district court was correct to conclude that Underwriters' reason—Alade's poor performance—was not pretextual.

Alade now asserts for the first time that Michelle Moreno, an analyst in the IT department, was similarly situated to him, but she was not fired for being incapable of creating the payroll software for China. Not only is there no evidence that Moreno had similar responsibilities or a similar record of poor performance, but Alade waived this argument by failing to raise it in the district court. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 783 (7th Cir. 2013); *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 719 (7th Cir. 2009).

AFFIRMED.